# Exhibit B

 

AGREEMENT made as of March 14, 1989 by and between, on the one hand, JOHN Z. DELOREAN ("Seller") and, on the other hand, AMBLIN' ENTERTAINMENT, INC.("Amblin'"), a _____ corporation, and UNIVERSAL PICTURES ("Universal"), a division of Universal City Studios, Inc., a Delaware corporation.  Amblin' and Universal are hereinafter referred to jointly as "Purchaser".

Preliminary Statements:  Purchaser is the producer of the theatrical motion pictures presently entitled "BACK TO THE FUTURE II" and "BACK TO THE FUTURE III", which are sequels to the motion picture entitled "BACK TO THE FUTURE" previously produced by Purchaser and distributed by Universal.  The aforesaid motion pictures are hereinafter referred to as the "Pictures".  As Seller is aware, Purchaser used, is using and will use suitably modified DeLorean automobiles as a "prop" (i.e., as a "time machine" belonging to the character "Doc Brown") in the Pictures and in advertising and other forms of exploitation realting thereto.  Seller acknowledges that Purchaser did not and does not need Seller's consent to such uses of DeLorean automobiles.  Purchaser now desires to acquire from Seller, and Seller desires to grant to Purchaser, certain rights in and to the name and appearance of the DeLorean automobile in order to enable Purchaser to engage in certain merchandising and commercial tie-up activities in connection with the Pictures.

NOW, THEREFORE, Purchaser and Seller hereby enter into this Agreement upon the following terms and conditions:

1.  Subject Matter:  The subject matter of this Agreement (hereinafter referred to as the "Material") is as follows:

(a)  The appearance of the DeLorean automobile, including, but not limited to, that appearance as depicted in that certain United States Patent number Des. 283,882, dated May 20, 1986, a copy of which is attached hereto as Schedule "I";

(b)  The name "DeLorean"; and

(c)  The logo "DMC" as it appears on the radiator grille of the DeLorean automobile.

2.  Rights Granted:  Seller hereby grants to Purchaser, the exclusive right, forever and throughout the universe, to use the Material in connection with "time machines" in any and all merchandising and commerical tie-ups as Purchaser may decide, including, but not limited to, the right to manufacture and sell or otherwise dispose of any articles of merchandising (such as toys, games, gadgets, novelties, books, apparel, food and beverages) or services using or based upon the Material.  Purchaser shall have the right to change, adapt, rearrange, add to and subtract from the Material in the preparation of any article of merchandising or commercial tie-up using or based upon the Material.

1

 

3. <u>Consideration</u>: In consideration of Seller's agreements, representations, warranties and indemnities hereunder, and of all rights in the Material which Seller has granted or agreed to grant hereunder, Purchaser agrees to pay to Seller sums equal to five percent (5%) of Purchaser's net receipts (defined below), from merchandising and commercial tie-ups in connection with the Pictures, provided that such merchandising and commercial tie-ups utilise or are based upon the Material as a key component. As used herein, the term "key component" means that one or more elements of the Material is primary or central to an item of merchandising or to a commercial tie-up. Examples of the Material as a key component are a toy time machine based on the modified DeLorean automobile used in the Pictures and tee shirts or posters with a picture of the DeLorean time machine more prominent than any other design element. Such items would qualify for the payments provided for above. On the other hand, a toy time machine included as one of several pieces in a board game, or a picture of the time machine in the background on a tee shirt, poster or book cover or a reference to the time machine in a book or other publication would not qualify for the payments provided for above. As used herein, the term "net receipts" means the gross receipts (i.e., sums received by Purchaser from its licensees), if any, actually received by Purchaser from such merchandising and commercial tie-ups of which the Material is a key component; computed, paid and accounted for in accordance with Universal's customary accounting practices, including deductions of the standard distribution fee of fifty percent (50%) of gross receipts and actual expenses incurred by Purchaser in connection with such merchandising and commercial tie-ups.

4. <u>Representations and Warranties</u>: Seller represents and warrants that Seller is the sole owner of the rights in the Material granted or agreed to be granted to Purchaser hereunder; that Seller has the unrestricted right and power to grant the rights in the Material herein specified; that no merchandising and/or commercial tie-up rights in the Material have heretofore been granted, licensed or otherwise transferred to any other person, firm or corporation by any agreement or instrument now valid or outstanding, nor have said rights been encumbered or hypothecated by any act or omission; and that said rights are free and clear of any and all claims or liens whatsoever, and will remain so, insofar as Purchaser is concerned.

5. <u>Indemnities</u>: Seller agrees to and does hereby indemnify and hold Purchaser harmless from and against any claim, liability, action, proceeding and/or demand, brought, maintained, prosecuted and/or made, whether or not well founded, whether by Seller or by any other person or entity, based upon, arising out of, resulting from or incurred because of the breach or alleged breach of any representation and/or covenant made by Seller in this Agreement, and from and against any and all loss, cost and/or expense incurred which is sustained by Purchaser in connection therewith, including, but not limited to, reasonable attorneys' fees. Purchaser shall have the right to settle and/or compromise all claims and actions against Purchaser in

2

DMC-000102

APR-11-'99 TUE 12:09 ID:MAYER MORGANROTH     TEL NO:1-313-355-3317     #352 P04  

connection with the Material and/or the other rights or privileges granted to Purchaser hereunder, subject to Seller's consent, not to be unreasonably withheld.

6. <u>Claims</u>: To the extent that Seller may have the right to prevent the use by third parties of the Material in a manner inconsistent with the rights granted to Purchaser hereunder, Seller hereby agrees that Purchaser may take, and Seller irrevocably grants Purchaser full power and authority to commence and prosecute in Seller's name such claims, actions and/or proceedings, any and all such steps as Purchaser in its discretion may elect, to restrain and prevent others from so doing, and Seller shall cooperate fully with Purchaser in this regard. Any costs incurred by Purchaser in connection with such claims shall be considered an "actual expense" pursuant to paragraph 3 above.

7. <u>Further Instruments</u>: At Purchaser's request, Seller agrees to execute and deliver to Purchaser such further documents as Purchaser may reasonably require to effectuate the intent and purpose of this Agreement. If Seller fails to execute and delivery such instruments to Purchaser within a reasonable time after such request, Seller hereby irrevocably appoints Purchaser Seller's attorney-in-fact to execute such instruments.

8. <u>Notices and Payments</u>: Any notice shall be given in writing, as follows:

        To Seller:   c/o Morganroth & Morganroth
                     28388 Northwestern Highway, Ste 444
                     Southfield, MI 48034
                     Attn: Mayer Morganroth, Esq.

        To Amblin':  100 Universal City Plaza, Bungalow 477
                     Universal City, CA 91608
                     Attention: Brad Globe

            With courtesy copy to : Gang, Tyre, Ramer & Brown, Inc.
                                    6400 Sunset Bldg
                                    Los Angeles, CA 90028
                                    Attention: Bruce M. Ramer, Esq.

        To Universal: 100 Universal City Plaza
                      Universal City, CA 91608
                      Attn: Feature Law Dept.

Any party may designate a substitute address by written notice to the others. Notices shall be mailed or transmitted by cable or telegraph and the date of mailing or transmission of any notice shall be deemed the date of service thereof. All payments to Seller hereunder shall be made by delivery or mailing to Seller at the address set forth above.

3

DMC-000103

TO:HATER MCFGHPOTH     TEL NO:1-515-555-0017     #452 P05





9.  **Assignment:**  This Agreement shall bind and inure to the benefit of Seller's and Purchaser's respective heirs, legal representatives, successors and assigns.  Purchaser may assign or license all or any part of the rights in the Material granted to Purchaser hereunder.  The term "person" as used herein shall include natural persons, firms and corporations.

10.  **Laws:**  This Agreement shall be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of California applicable to agreements executed and to be wholly performed within that state.

11.  **Merger:**  This agreement includes the entire understanding of the parties with respect to the subject matter hereof, and all prior and concurrent oral agreements, and all prior written agreements with respect to such subject matter, have been merged herein.  No representations or warranties have been made other than those expressly provided for herein.  This Agreement may not be modified, except by a written instrument signed by the parties.

AMBLIN' ENTERTAINMENT, INC.

By _____

JOHN Z. DELOREAN

UNIVERSAL PICTURES, a division of
Universal City Studios, Inc.

By _____
    Vice President

4

DMC-000104