# IN THE UNITED STATES COURT
# FOR THE DISTRICT OF NEW JERSEY

SALLY DELOREAN as administratrix for
THE ESTATE OF JOHN Z. DELOREAN,

        Plaintiff,

v.

DELOREAN MOTOR COMPANY (TEXAS),

        Defendant.

Civil Action No. 2:18-cv-08212

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

---

**LOWENSTEIN SANDLER LLP**
Attorneys at Law
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Plaintiff Sally DeLorean as Administratrix for Estate of John Z. DeLorean*

Of Counsel and on the Brief:
    R. Scott Thompson

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 5

I. DEFENDANT'S MOTION TO DISMISS MUST BE DENIED ........ 5

A. There is no "Covenant Not to Sue" Concerning the Universal Contract ........ 6

B. The Estate Did Not Give DMC-Texas the Exclusive Right to Use the "Material" Described in the Universal Contract ........ 7

1. The Settlement Agreement Does Not Confer "Exclusive" Rights ........ 8

2. The Settlement Agreement Does Not Cover "Material" Identified in the Universal Contract ........ 10

II. THE ESTATE IS ENTITLED TO SUMMARY JUDGMENT ........ 12

CONCLUSION ........ 16

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................................12

*Canessa v. J. I. Kislak, Inc.*,
    97 N.J. Super. 327 (Law Div. 1967)..........................................................................10

*Emerson Radio Corp. v. Orion Sales, Inc.*,
    253 F. 3d 159 (3d Cir. 2001) ......................................................................................13

*Heritage Pacific Financial, LLC v. Monroy*,
    215 Cal. App. 4th 972 (Cal. Ct. App. 2013)..............................................................13

*K. Woodmere Associates, L.P. v. Menk Corp.*,
    316 N.J. Super. 306 (App. Div. 1998) (citing 3 *Williston, Contracts*
    (3d Ed. Jaeger 1957) Section 404 at 4).............................................................13, 14

*LaJeune v. Bliss-Salem, Inc.*,
    85 F. 3d 1069 (3d Cir. 1996) .....................................................................................12

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F. 3d 1153 (3d Cir. 1993) .........................................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................................12

*Middlesex Surgery Center v. Horizon, et al.*,
    *2013 WL 775536* (D.N.J. Feb. 28, 2013).................................................................13

*Prima v. Darden Restaurants, Inc.*,
    78 F. Supp. 2d 337 (D.N.J. 2000)..............................................................................11

*Salandstacy Corp. v. Freeney*,
    2012 WL 959473 (D.N.J March 21, 2012)................................................................6

*Veteran Call Center, LLC v. Hammerman & Gainer, Inc.*,
    2016 WL 1587404 (D.N.J. April 19, 2016).............................................................13

RULES

Fed. R. Civ. P. 56............................................................................................................1

Plaintiff Sally DeLorean as administratrix of the Estate of John Z. DeLorean (the "Estate") respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss and In Support of the Estate's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

This is as simple and straightforward a case as this Court will ever be called upon to decide. It involves no more than reading the plain words of a settlement agreement and declaring what they say. In this case, the Defendant obtained money belonging to the Estate by falsely claiming that the Estate had assigned its rights under a contract for royalties to the Defendant. The Defendant now claims that the assignment is contained in a settlement agreement between the Defendant and the Estate. But, like its wholly dishonest conduct in stealing the money in the first place, the Defendant's reliance upon the settlement agreement has no basis in fact or law.

In 1989, John Z. DeLorean entered into an agreement with Universal Pictures (the "Universal Contract") pursuant to which Mr. DeLorean assigned Universal the exclusive right to use the image of the automobile designed by Mr. DeLorean, and certain associated rights, in connection with Universal's "Back to the Future" movies. In return, Mr. DeLorean was to receive a royalty. Universal stopped paying the royalty at some point for unknown reasons. Mr. DeLorean died in 2005, but his estate did not have a copy of the Universal Contract, and was unable to claim the benefits owed by Universal.

In 2017 or 2018, unbeknownst to the Estate, a representative of DeLorean Motor Company (Texas) ("DMC-Texas") – a company that has no relationship to Mr. DeLorean or his estate, but simply set up shop using his name – persuaded Universal to pay to DMC-Texas some

20 years of royalties that had not been paid to Mr. DeLorean.  In order to induce Universal to make the payment, DMC-Texas falsely represented to Universal that Mr. DeLorean's estate had assigned Mr. DeLorean's rights under the Universal Contract to DMC-Texas.

When the Estate learned of this fraud, it initiated this lawsuit.  Now, DMC-Texas claims that the Estate assigned its rights under the Universal contract to DMC-Texas in a settlement agreement (the "Settlement Agreement") by which Mr. DeLorean's Estate and DMC-Texas settled an unrelated lawsuit brought by the Estate against DMC-Texas in 2014 (the "2014 lawsuit").

Defendant's claim that the Settlement Agreement included an assignment of rights is absurd.  The Settlement Agreement does not mention the Universal Contract; it does not include any assignment of any rights whatsoever; and the language in the Settlement Agreement upon which DMC-Texas bases its "assignment" claims cannot possibly be read as an assignment of the Estate's rights under the Universal Contract.  Under controlling New Jersey and California case law, it is plain that the Estate did not assign to Defendant its rights under the Universal Contract.  And, although DMC-Texas alleges that it owns the exclusive right to use the image of the DeLorean automobile, that claim has no support in the Settlement Agreement and would not give it any rights under the Universal Contract in any event.

The action of DMC-Texas is fraudulent; indeed, it is outright theft.  In this action, and in the competing dispositive motions now before the Court, we ask this Court to enforce the plain terms of the Settlement Agreement and require DMC-Texas to pay over to the Estate whatever money it obtained from Universal.  The terms of the Settlement Agreement make it clear that DMC-Texas has no right to the money it obtained from Universal, and must pay that money over to the rightful owner, the Estate.

## STATEMENT OF FACTS

John Z. DeLorean was a well-known auto industry executive who started his own automobile company, the DeLorean Motor Company, in 1973. The design of the automobile manufactured by the DeLorean Motor Company was unique. Only approximately 9,000 were manufactured before the company went out of business in 1982. Plaintiff's Statement of Uncontested Material Facts ("SUMF") ¶ 1.

On March 14, 1989, Mr. DeLorean entered into an agreement with Universal Pictures, a division of Universal Studios, Inc., by which Universal agreed to pay Mr. DeLorean a royalty in return for Mr. DeLorean's agreement that Universal could use the image of the DeLorean automobile in connection with its Back to the Future series of movies. Certification of R. Scott Thompson dated June 15, 2018 ("Thompson Cert."), Ex. B at Sections 1 and 2.

Mr. DeLorean died in 2005. He had not received any royalty payments for some time prior to his death and at the time of his death the Estate did not have a copy of the Universal Contract. As a result, Mr. DeLorean's widow did not list it as an asset of Mr. DeLorean's Estate. Certification of Sally DeLorean dated June 15, 2018 ("DeLorean Cert.") ¶¶ 2-3.

The Estate sued DeLorean Motor Company (Texas) ("DMC-Texas") in 2014 because DMC-Texas was using Mr. DeLorean's legacy and information developed by Mr. DeLorean to promote its own business without permission from the Estate. *Id.* The Estate obtained a copy of the Universal Contract from DMC-Texas in the course of discovery in the 2014 Lawsuit. *Id.* ¶ 4.

The Estate settled the 2014 Lawsuit in September 2015. The Settlement Agreement executed by the parties is effective as of September 23, 2015. It makes no mention of the Universal Contract and assigns no rights to DMC-Texas. Instead, in the Settlement Agreement the Estate agreed to the following:

\*         It "acknowledge[ed]" (a) unspecified trademarks owned by DMC-Texas and (b) DMC-Texas' non-exclusive right "to use the DeLorean automobile brand, and associated products and services" (Thompson Cert. Ex. A section 3(b));

\*         It covenanted that it had not transferred any rights to claims it made in the 2014 Lawsuit (*id.*);

\*         It agreed that it would not participate in any legal proceeding against DMC-Texas in the future in connection with "(i) the use by DMC Texas of (a) the name "DeLorean Motor Company", or (b) the trademark registered to DMC Texas of the DMC logo, or (ii) the use by DMC Texas of the trademark registered to DMC Texas of the stylized word "delorean" ("DeLorean Marks") . . . in conjunction with the automobile industry and associated business ventures . . . or related to the business of the DeLorean Motor Company, DMC Texas and its associated brand" (*id.*);

\*         It acknowledged the non-exclusive "worldwide rights of DMC to use, register, and enforce any of DeLorean Marks for any and all goods and services, relating to automobile dealerships, automobiles, automobile parts and accessories, clothing, and promotional items" (*id.*); and

\*         It consented to, and agreed not to oppose, cancel, or otherwise challenge the registration, or use by DMC of the DeLorean Marks" (*id.*)

In the Settlement Agreement, the Estate did not transfer to DMC-Texas the right to do anything or use any aspect of any intellectual property. Other than releasing DMC-Texas from the claims made in the 2014 lawsuit, the only concessions made by the Estate in the Settlement Agreement were (1) the Estate acknowledged the right of DMC-Texas to use the DeLorean automobile brand and related decorative marks on a non-exclusive basis, and (2) the Estate covenanted that it would not participate in any lawsuit in the future in connection with the use by DMC-Texas of certain words, trademarks, and logos used by DMC-Texas in connection with the business run by DMC-Texas.  In fact, Defendant explicitly admits that, in the Settlement Agreement, the Estate did not "transfer, or purport to transfer, any rights". Def's Brf. at 5 n. 10.

In February 2018, the Estate contacted Universal to demand an accounting of amounts owed under the Universal Contract.  Thompson Cert. ¶ 4.  On March 13, 2018, Universal informed the Estate's representative that DMC-Texas had informed Universal that the Estate had

assigned its rights under the Universal contract to DMC-Texas and that, in reliance on that representation, Universal paid to DMC-Texas all amounts owed to John DeLorean and his estate. Universal informed the Estate that the amount paid to DMC-Texas was well in excess of $100,000. *Id.* ¶ 5.

The Estate has one creditor, Mayer Morganroth. Mr. Morganroth was involved in the execution of the Universal Contract, and was kept informed of the negotiations that led up to the Settlement Agreement in 2015. Mr. Morganroth supports the Estate's efforts to recover all amounts paid to DMC-Texas by Universal. Certification of Mayer Morganroth, Esq. dated June 13, 2018 at ¶¶ 3-8.

## ARGUMENT

The terms of the Settlement Agreement do not even remotely give DMC-Texas the right to step into the Estate's shoes in the Universal Contract, which is the determinative issue in these competing dispositive motions. Moreover, the alleged bases for Defendant's motion to dismiss – that the Estate covenanted not to sue DMC-Texas in a case like this and that the Estate gave to DMC-Texas exclusive rights to monetize the "Material" licensed to Universal -- do not exist in the Settlement Agreement or anywhere else.

I.  **DEFENDANT'S MOTION TO DISMISS MUST BE DENIED**

Defendant makes two arguments in support of its motion to dismiss. First, it argues that the Estate agreed in the Settlement Agreement not to bring suit against DMC-Texas. Second, it argues that the Estate gave it the exclusive right to exploit the "Material" licensed to Universal in 1989. Neither of these arguments stands up to even the slightest scrutiny.

**A.      There is no "Covenant Not to Sue" Concerning the Universal Contract**

Defendant argues that Complaint should be dismissed because the Estate covenanted not to sue DMC-Texas in the Settlement Agreement, and that this lawsuit is a violation of that covenant.  DMC-Texas characteristically misstates the terms of the Settlement Agreement.

As pointed out above, the Estate agreed to a limited, and specific, covenant not to sue DMC-Texas in the future, and that covenant has nothing to do with this case.  The specific relevant language is as follows:

> ". . . [T]he Estate covenants and agrees that . . . it will not willingly participate in any legal proceeding against DMC-Texas in the future in connection with (i) the use by DMC Texas of (a) the name "DeLorean Motor Company", or (b) the trademark registered to DMC Texas of the DMC logo, or (ii) the use by DMC Texas of the trademark registered to DMC Texas of the stylized word "delorean" ("DeLorean Marks") . . . in conjunction with the automobile industry and associated business ventures . . . or related to the business of the DeLorean Motor Company, DMC Texas and its associated brand". . .

Thompson Cert. Ex. A section 3(b).

The present lawsuit does not involve any of the listed items or issues.  In this lawsuit, the Estate challenges the improper conduct of DMC-Texas in appropriating for itself a contract right belonging to the Estate.  The Universal Contract does not involve DMC-Texas in any way, shape or form; DMC-Texas is a complete stranger to the Universal Contract.  It is not in privity with Universal; in fact, its conduct amounts to tortious interference with contractual rights belonging to the Estate.  *See, e.g., Salandstacy Corp. v. Freeney,* 2012 WL 959473, *13 (D.N.J March 21, 2012) (five elements of tortious interference claim are existence of contract, defendant's knowledge of contract, intentional interference by defendant, likelihood that plaintiff would have benefited absent interference, and damages); *Lightning Lube, Inc. v. Witco Corp.,* 4 F. 3d 1153, 1167 (3d Cir. 1993).  In short, the Estate's agreement not to sue that is memorialized in the Settlement Agreement has nothing to do with the claim made in this case.

The covenant not to sue in the Settlement Agreement is instead limited to challenges to the use by DMC-Texas of three things in the conduct of its business: the name "DeLorean Motor Company"; the trademark assigned to DMC-Texas of the DMC logo; and the use by DMC –Texas of the trademark of the stylized word "delorean". The present lawsuit does not challenge the use by DMC-Texas of any of those three things. The conduct challenged in this suit is DMC-Texas' theft of a contract right belonging to the Estate. The Estate's claims have absolutely nothing to do with how Defendant may have used any of the so-called "marks".

Moreover, the covenant not to sue is limited in another way: it only applies as to DMC-Texas' use of the marks *in connection with the business of DMC-Texas*. The Universal Contract has nothing to do with the business of DMC-Texas. DMC-Texas has never had the right to make commercial use of the "Back to the Future" version of the DeLorean automobile, which is all that is involved in the Universal Contract. Indeed, DMC-Texas does not own any right to the image of the DeLorean automobile at all. Its business most certainly does not involve Mr. DeLorean's pre-existing contractual relationships, including those by which he licensed use of the image of the DeLorean automobile to Universal. In short, there is no way for DMC-Texas to argue credibly that its interference with the Estate's relationship with Universal was a "use" of marks in connection with its own business because its business does not have anything to do with the "Back to the Future" movies.

### B. The Estate Did Not Give DMC-Texas the Exclusive Right to Use the "Material" Described in the Universal Contract

Defendant also argues that the Complaint fails to state a claim because "[t]he Estate's interpretation of the Universal Contract would essentially allow them [sic] to utilize the DeLorean Marks, despite the fact that in the Settlement Agreement, the Estate specifically acknowledged DMC's 'worldwide rights' to said Marks." In other words, DMC-Texas claims

that the Estate has given DMC-Texas the exclusive right to use not only the subjects identified in the Settlement Agreement as the "DeLorean Marks", but also the image of the DeLorean automobile and the name "DeLorean". The claim is ludicrous, and is contradicted by the terms of the Settlement Agreement.

### 1.     The Settlement Agreement Does Not Confer "Exclusive" Rights

For starters, the Estate did not *give* DMC-Texas any rights in the Settlement Agreement to anything, let alone any exclusive rights. The most that the Estate did was "acknowledge" that DMC-Texas had a right to use certain marks. *See, e.g.,* Thompson Cert. Ex. A section 3(b) (right to use "the DeLorean automobile brand"; right to use DeLorean Marks (as defined in Settlement Agreement) for limited purposes). But the Estate did not *give* to DMC-Texas any rights in the Settlement Agreement, and DMC-Texas knows that. As Defendant explicitly says in its brief, "the Settlement Agreement does not transfer or purport to transfer any rights . . ." Def's Brf. at 5 n. 10.

Moreover, nothing in the Settlement Agreement states that DMC-Texas had *exclusive* rights to anything. Defendant argues again and again that the Settlement Agreement gave it the exclusive ownership of a wide range of intellectual property and images (*e.g.,* "The clear terms and intent of the Settlement Agreement was [sic] to acknowledge the ownership of all 'worldwide' rights to the automobile brand and the DeLorean Marks in [sic] DMC, *as well as the ability for DMC to exclusively use and employ all rights stemming from DMC, without limitation, forever"* Def's Brf. at 8 (emphasis supplied)*).* This sentence illustrates well Defendant's lack of connection to reality.

For one thing, it wildly overstates the rights actually identified and, in some cases, acknowledged, in the Settlement Agreement. The Settlement Agreement does not mention "all

-8-

rights stemming from DMC" (whatever they might mean), and there are most certainly limitations set forth on the acknowledgements in the Settlement Agreement. In addition, the sentence imports the word "exclusive" from some unknown location other than the Settlement Agreement; the word "exclusive" does not appear in the Settlement Agreement (other than in the section giving this Court exclusive jurisdiction to hear disputes).

The Estate's acknowledgement of DMC-Texas' right to use certain marks did not give DMC-Texas any rights that it did not already have.  Similarly, the Estate's agreement that it would not sue DMC-Texas over that company's use of certain marks did not give DMC-Texas any rights, let alone any "exclusive" rights.  DMC-Texas argues that it has the exclusive right to use the marks, but that argument has no basis in the Settlement Agreement because the Estate did not give Defendant any exclusive rights in the Settlement Agreement.

In short, the Settlement Agreement did not give DMC-Texas the sole right use anything. The Estate had the right to use intellectual property belonging to John DeLorean before the Settlement Agreement was signed, and it continues to have the same rights after the signing of the Settlement Agreement.  The Estate did not agree in the Settlement Agreement that it would forego its right to make commercial use in the future of Mr. DeLorean's intellectual property.  It should go without saying, then, that it did not agree that only DMC-Texas could use Mr. DeLorean's intellectual property.

Defendant's argument that the Complaint fails to state a claim because it asserts claims inconsistent with the allocation of rights in the Settlement Agreement is therefore incorrect.  The argument depends upon a different settlement agreement than the one the parties actually executed.  The one the parties actually signed – the Settlement Agreement – does not give DMC-Texas the rights it hypothesizes, upon which its motion to dismiss is based.  Instead, the

Settlement Agreement leaves the Estate with the right to exploit aspects of Mr. DeLorean's intellectual property, including the subjects of the Universal Contract, to the same extent as before the agreement was signed.

### 2. The Settlement Agreement Does Not Cover "Material" Identified in the Universal Contract

There is another, equally compelling, reason why Defendant's use of the Settlement Agreement to justify its theft is incorrect. Defendant claims that the Estate's interpretation of the Settlement Agreement is "inconsistent" with the Universal Contract, but that claim lacks any basis in fact because the subjects of the Universal Contract are not covered by the Settlement Agreement (and do not otherwise belong to DMC-Texas). In the Universal Contract, Mr. DeLorean licensed to Universal the right to use three items of intellectual property: the appearance of the DeLorean automobile designed by Mr. DeLorean, the name "DeLorean", and the logo "DMC" as it appears on the grille of the DeLorean automobile. None of these is allocated to DMC-Texas in the Settlement Agreement, so Defendant's motion to dismiss claiming that the Complaint is inconsistent with the Settlement Agreement fails for this reason as well.

The Settlement Agreement does not mention "the appearance of the DeLorean automobile", the first and central aspect of the "Material" licensed by Mr. DeLorean to Universal in 1989. Nothing in the Settlement Agreement gives DMC-Texas any basis to argue that it alone has the right to deal with Universal concerning "the appearance of the DeLorean automobile". The Estate certainly retains the right to do as it sees fit with the image of the DeLorean because it made no concessions on the subject in the Settlement Agreement.

The name "DeLorean", the second component of the "Material" licensed to Universal in 1989, belongs exclusively to the Estate; DMC-Texas has no right to the name. *E.g., Canessa v.*

*J. I. Kislak, Inc.*, 97 N.J. Super. 327, 339, 351 (Law Div. 1967); *Prima v. Darden Restaurants, Inc.,* 78 F. Supp. 2d 337, 349 (D.N.J. 2000). In fact, the Settlement Agreement makes it clear that the Estate has the right to use the name. Unlike the provisions in the Settlement Agreement in which DMC-Texas is allowed a non-exclusive right to use certain information, the Settlement Agreement gives the *Estate* the exclusive right to use the name DeLorean; it states that "[t]he Estate retains *all* right in any other use of the name DeLorean . . ."[1] Thompson Cert. Ex. A section 3(b).

The third component of the term "Material" in the Universal Contract is "the logo 'DMC' as it appears on the radiator grille of the DeLorean automobile". Thompson Cert. Ex. B section 1. The Settlement Agreement does not give DMC-Texas an exclusive right to use this image either. The only provision of the Settlement Agreement that even arguably relates to this component states that the Estate will not sue DMC-Texas over the use of the trademark of the DMC logo by DMC-Texas in its business. That limited covenant not to sue is plainly not an allocation to Defendant of an exclusive right to use "the logo 'DMC' as it appears on the radiator grille of the DeLorean automobile".[2]

In short, the components of the "Material" licensed to Universal are not even mentioned in the Settlement Agreement. Defendant's attempt to use the Settlement Agreement to estop the Estate lack any basis in the terms of the Settlement Agreement. The Estate did not agree in the Settlement Agreement that DMC-Texas would have the exclusive right to commercialize anything; even the few scraps of intellectual property identified the Settlement Agreement are

---

[1] Other than the joint right of DMC-Texas to use the name "DeLorean Motor Company" and the use of the trademark of the stylized word "delorean". *Id.*

[2] DMC-Texas' registration of a trademark of the DMC logo does not give them any rights that are relevant to this case for a number of reasons, including that that registration is only for uses in connection with automobiles, automobile parts, automobile dealerships, and clothing. Thompson Cert. Ex. D. Moreover, if DMC-Texas believed that it had trademark rights implicated by the Universal Contract, its remedy was to pursue alleged infringement through the courts. Possession of a trademark does not give the owner the right to interfere in other parties' contracts.

not allocated to DMC-Texas on an exclusive basis. Moreover, the "Material" that is the subject of the Universal Contract – the appearance of the DeLorean automobile, the name DeLorean, and the "DMC" logo on the grille of the car – is not discussed in the Settlement Agreement, so there is not even a scintilla of fact supporting Defendant's motion to dismiss based on "unsupportability" and "futility" at pages 7 through 9 of Defendant's brief.

Defendant's motion to dismiss the Complaint purports to be based on the Settlement Agreement, but it is not based on the settlement agreement that the parties signed. That Agreement does not include the terms that Defendant hypothesizes. When the actual terms of the Settlement Agreement are considered, it is clear that Defendant's motion to dismiss must be denied.[3]

## II.   THE ESTATE IS ENTITLED TO SUMMARY JUDGMENT

To prevail on a motion for summary judgment, a party must establish that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A question of fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the only issue is the correct construction of a contract, the case is particularly suitable for disposition on summary judgment. As the court said in *LaJeune v. Bliss-Salem, Inc.,* 85 F. 3d 1069, 1073 (3d Cir. 1996) "Where . . . a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage." *Accord,*

---

[3]   Defendant also makes a judicial estoppel argument, claiming that the Estate cannot claim rights under the Universal Contract because the Contract was not identified in a filing by the Estate at the time of Mr. DeLorean's death. Def's Brf. at 9-10. Defendant cites no authority in support of the argument, but it is of no moment since the facts do not support the argument. It is undisputed that the Estate did not have a copy of the Universal Contract at the time of Mr. DeLorean's death. Certification of Sally DeLorean dated June 15, 2018 at ¶ 3. It is also undisputed that the Estate's only creditor has been made aware of this action and the Estate's efforts to recover what it is owed, and fully supports the Estate in its efforts. Certification of Mayer Morganroth, Esq. dated June 13, 2018.

*Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F. 3d 159, 164-65 (3d Cir. 2001); *Veteran Call Center, LLC v. Hammerman & Gainer, Inc.,* 2016 WL 1587404 *4 (D.N.J. April 19, 2016). Here, Defendant agrees that "[t]he terms of the Settlement Agreement are clear and direct, and free from ambiguity." Def's Brf. at 2. Summary judgment is therefore an appropriate for disposition of this case at this stage.

This case is appropriate for summary decision. There is no dispute that Defendant informed Universal that it was entitled to enforce the Universal Contract because the Estate had assigned its rights to DMC-Texas. There is no dispute that, based upon these representations, Universal paid approximately 20 years of royalties to DMC-Texas. The only disputed issue is whether, in the Settlement Agreement, the Estate assigned its rights under the Universal Contract to DMC-Texas.[4] The answer to that question is clearly no.

Under both New Jersey and California law, the law concerning assignment of contract rights is the same: in order for there to be a valid assignment of rights under a contract, the parties must clearly define the rights that are being assigned. "A valid assignment must contain evidence of the intent to transfer one's rights and 'the subject matter of the assignment must be described sufficiently to make it capable of being identified'." *K. Woodmere Associates, L.P. v. Menk Corp.,* 316 N.J. Super. 306, 391 (App. Div. 1998) (*citing* 3 *Williston, Contracts* (3d Ed. Jaeger 1957) Section 404 at 4). "Only an assignment that clearly reflects the assignor's intent to transfer his rights will be effective." *Middlesex Surgery Center v. Horizon, et al., 2013 WL 775536* *3 (D.N.J. Feb. 28, 2013)(Chesler, D.J.); *Heritage Pacific Financial, LLC v. Monroy,* 215 Cal. App. 4th 972, 988 (Cal. Ct. App. 2013) (same).

---

[4] Plaintiff does not know the amount of money received by DMC-Texas from Universal, but has sought an accounting and disgorgement as part of the remedy in this case. Those remedies can be ordered upon a finding of liability.

Defendant contends that the Estate assigned its rights under the Universal Contract when the Estate executed the Settlement Agreement. In order for there to have been an assignment in the Settlement Agreement, then, the Settlement Agreement must "contain evidence of [the Estate's] intent to transfer [its] rights, and the subject matter of the assignment [the Estate's rights under the Universal Contract] must be described sufficiently to make it capable of being identified." *K. Woodmere Associates,* at 391. Under this standard, Defendant cannot argue in good faith that there has been an assignment.

First, as discussed at length above, there is no evidence in the Settlement Agreement that the Estate intended to assign anything to DMC-Texas. The verb "assign" only appears in a section dealing with assignment of the parties' rights under the Settlement Agreement, which is not at issue in this case. There is no other use of the verb "assign", or of the word "assignment". There is no use of any other verb denoting a transfer of any rights, and there is nothing in the Settlement Agreement that can even arguably be said to evidence an intent to transfer a right. In fact, Defendant expressly admits that "[t]he Settlement Agreement does not transfer or purport to transfer any rights . . ." Def's Brf. at 5 n. 10. There is no way to read the Settlement Agreement as evincing an intent on the part of the Estate to transfer any rights.

Nor is the subject matter of the alleged assignment – the Estate's rights under the Universal Contract -- identified, as would be required under New Jersey and California law in order for there to be an assignment. The Settlement Agreement does not mention the Universal Contract. In fact, the Settlement Agreement does not mention contract rights at all, let alone in any context that could possibly be construed as a transfer by the Estate of rights.

The requirements that must be met for a valid assignment of contract rights under New Jersey and California law are clear, and they do not exist in the Settlement Agreement. There is

-14-

no evidence supporting Defendant's claim that the Estate assigned its rights under the Universal Contract to DMC-Texas, let alone the clear evidence required under New Jersey and California law. The Estate is entitled to a declaration that it retained its right to enforce the Universal Contract, that DMC-Texas has no rights under that contract, and that DMC-Texas must therefore disgorge to the Estate all monies it received from Universal based upon the false representation that it was the assignee of the Estate's rights.[5]

One last point must be addressed. Defendant argues (at 8-9 of its Brief) that the declaration sought would be futile. Defendant argues that if this Court were to declare that the Estate did not assign its rights under the Universal Contract to DMC-Texas, "this would not preclude DMC from seeking to enforce its rights against Universal under separate cover." This statement reflects the same disrespect for the law, and for this Court, that DMC-Texas demonstrated the last time it was before this Court and in the conduct that forms the basis of this lawsuit.

First, it makes it clear that DMC-Texas understood full well that its only remedy if it believed that the Universal Contract implicated its rights was to raise any alleged infringement of a right with Universal. Instead of taking the route permitted by law, DMC-Texas chose to falsely represent a document filed in this Court as giving it rights that it does not have, hoping that no one would ever discover the fraud.

Second, now that its fraud has been discovered, DMC-Texas insists that it has rights that it does not have. As set forth above at 11 through 13, DMC-Texas has no rights to any of the

---

[5] To the extent that DMC-Texas might argue that it was assigned rights under the Universal Contract by implication – that is, by the Estate transferring to it rights to the "Material" that is the subject of the Universal Contract – that argument would be incorrect because (a) the law on assignment requires more than simply implication; (b) as set forth above at pages 8 through 11, the Estate did not acknowledge in the Settlement Agreement that DMC-Texas had exclusive rights to anything, and the Estate retains its rights to exploit all of the intellectual property discussed in the Settlement Agreement, and (c) as set forth above at 11 through 13, the components of the "Material" licensed to Universal were not discussed in the Settlement Agreement and do not otherwise exclusively belong to DMC-Texas.

"Material" licensed to Universal in 1989. It has no right to the appearance of the DeLorean automobile; it has no right to the name DeLorean; and it has no right to the "DMC" logo as it appears on the grille of the DeLorean automobile. It nevertheless threatens that it will ignore an order of this Court if this Court rules in favor of the Estate. This lawlessness typifies the way DMC-Texas conducts its affairs. It is clear that DMC-Texas intends to continue to interfere with the legitimate contractual relationship between the Estate and Universal even if this Court rules against it. We have therefore taken the liberty of submitting a proposed form of order that anticipates, and prohibits, such misconduct.

## **CONCLUSION**

For the foregoing reasons, the Estate respectfully requests that this Court enter summary judgment in its favor on the claims set forth in the Complaint.

                                                        Respectfully submitted,

                                                        **LOWENSTEIN SANDLER LLP**
                                                        Attorneys for the Estate

                        By:     s/ R. Scott Thompson
                                R. Scott Thompson, Esq.

Dated: June 18, 2018