IN THE UNITED STATES COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALLY DELOREAN as administratrix for THE ESTATE OF JOHN Z. DELOREAN,<br><br>Plaintiff,<br><br>v.<br><br>DELOREAN MOTOR COMPANY (TEXAS),<br><br>Defendant. | Civil Action No. 2:18-cv-08212<br><br>**CERTIFICATION OF R. SCOTT THOMPSON, ESQ.** |

R. Scott Thompson certifies as follows:

1. I am a partner with Lowenstein Sandler LLP, which represents the Estate of John Z. DeLorean (the "Estate"). I make this certification based on my own knowledge and in support of the motion of the Estate for summary judgment on its claims against DeLorean Motor Company – Texas ("DMC-Texas").

2. I represented the Estate in its lawsuit in 2014 and 2015 against DMC-Texas. I negotiated the terms of the settlement agreement by which the lawsuit was settled. A copy of the settlement agreement is attached as Exhibit A. At no time during negotiations over the settlement of the 2014 lawsuit did I agree on behalf of the Estate to assign to DMC-Texas the Estate's rights to anything, let alone the Estate's rights under John DeLorean's 1989 contract with Universal Pictures.

3. Attached as Exhibit B hereto is a copy of an agreement between John Z. DeLorean and Universal Pictures dated March 14, 1989 (the "Universal Contract"). Under the Universal contract, Universal agreed to pay to Mr. DeLorean a certain percentage of amounts

earned by Universal from the sale of products bearing the image of the DeLorean automobile (the "Royalties").

4. On February 13, 2018, I wrote to Universal Pictures demanding an accounting of amounts owed under the Universal Contract. A copy of my letter to Universal is attached as Exhibit C.

5. On March 13, 2018, I spoke with Adam Hagen, an attorney representing Universal Pictures. Mr. Hagen informed me that one Roger Dartt of DMC-Texas had contacted him several months earlier, and that Mr. Dartt falsely informed Mr. Hagen that the Estate had assigned all of its rights under the Universal Contract to DMC-Texas. In support of this claim, Mr. Dartt sent to Mr. Hagen various documents, including a copy of the 2015 settlement agreement between the Estate and DMC-Texas. Mr. Hagen informed me that, based upon Mr. Dartt's false representations, Universal had made payments to DMC-Texas of all amounts owed to that point to Mr. DeLorean for approximately 20 years of Royalties. Mr. Hagen informed me that bthe amount paid to DMC-Texas was well in excess of $100,000.

6. Attached hereto as Exhibit D is a printout from the United States Office of Patents and Trademarks showing a trademark registered to DMC-Texas.

I certify that the foregoing statements are true. I am aware that if any of the foregoing statements are intentionally false, I am subject to punishment.

Dated: June 15, 2018

_____
R. Scott Thompson

# Exhibit A

Case 2:14-cv-01146-JLL-JAD  Document 27  Filed 09/18/15  Page 2 of 5 PageID: 85

## RULE 11 SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and is effective as of September 23, 2015 ("Effective Date"), by and between the Estate of John Z. DeLorean ("Estate") and DeLorean Motor Company (Texas), ("DMC Texas").

WHEREAS, the Estate commenced litigation against DMC Texas by filing a Complaint on February 21, 2014 ("Complaint") in the United States District Court for the District of New Jersey, Case No. 2:14-cv-01146 ("Litigation");

WHEREAS, DMC Texas filed an Answer on April 21, 2014, in which it denied any liability in connection with the claims set forth in the Complaint; and

WHEREAS, the parties, solely for the avoidance of additional expense and without any admission of liability on the part of any party, wish to fully and finally resolve the Litigation;

NOW, THEREFORE, in consideration of the promises and covenants herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Payment.** DMC Texas agrees to make an agreed-upon payment to the Estate ("Payment") in full satisfaction of any and all claims against it in the Litigation. The Payment shall be made within 10 business days of the Effective Date.

2. **Dismissal of the Litigation.** Within 5 business days of receipt of the Payment, the Estate shall file a stipulation of dismissal, withdrawing the Complaint with prejudice ("Stipulation of Dismissal").

3. **Release, Acknowledgments & Covenant Not to Sue by the Estate.**

(a) **Release** With the exception of the obligations of DMC Texas set forth herein, upon receipt of the Payment and the filing of the Stipulation of Dismissal, the Estate, its partners, members, managers, directors, officers, shareholders, executives, administrators, parent companies, subsidiaries, divisions, employees, insurers, representatives, affiliates, agents, assigns, attorneys, predecessors and successors-in-interest (collectively, "Estate Releasors"), forever fully and finally release, acquit, discharge and hold harmless DMC Texas, its partners, members, managers, directors, officers, shareholders, executives, administrators, parent companies, subsidiaries, divisions, employees, insurers, representatives, affiliates, agents, assigns, attorneys, predecessors and successors-in-interest (collectively, "DMC Texas Releasees"), and each of them, from and against any and all claims and causes of action of any kind or character, in law or equity, and any and all liability now accrued, including all claims, causes of action, demands, losses, expenses, including attorney's fees, damages or injuries that were sought, or could have been sought, in the Litigation.

(b) **Recognition of Rights & Covenant Not to Sue.** The Estate acknowledges DMC Texas' trademarks and rights to use the DeLorean automobile brand, and associated products and

Case 2:18-cv-08212-JLL-JAD   Document 8-3   Filed 06/18/18   Page 5 of 17 PageID: 117
Case 2:18-cv-08212   Document 1-1   Filed 04/23/18   Page 3 of 5 PageID: 9

Case 2:14-cv-01146-JLL-JAD   Document 27   Filed 09/18/15   Page 3 of 5 PageID: 86

services, further, the Estate covenants and agrees that it has not transferred any rights related to claims it has made or could have made in the lawsuit, and it will not willingly participate in any legal proceeding against DMC Texas in the future in connection with (i) the use by DMC Texas of (a) the name "DeLorean Motor Company", or (b) the trademark registered to DMC Texas of the DMC logo, or (ii) the use by DMC Texas of the trademark registered to DMC Texas of the stylized word "delorean; ("DeLorean Marks") ("any of which are used in conjunction with the automobile industry and associated business ventures, including those associated with the DeLorean automobile, or other automotive products and services, and related brand merchandising and licensing associated or related to the business of the DeLorean Motor Company, DMC Texas and its associated brand. (Nothing contained in this paragraph shall prohibit Sally DeLorean, Individually and as Administratrix of the Estate of John DeLorean, from complying with any subpoena(s) and/or Order issued by a Court).

The Estate retains all right in (i) any other use of the name DeLorean, (ii) any aspect of the personal life of John Z. DeLorean, or (iii) any depiction of the likeness of John Z. DeLorean that is not public property or purchased from those legitimately holding publishing rights thereto.

Sally DeLorean, Individually and as Administratrix of the Estate of John DeLorean, hereby acknowledges the worldwide rights of DMC to use, register, and enforce any of DeLorean Marks for any and all goods and services, relating to automobile dealerships, automobiles, automobile parts and accessories, clothing, and promotional items.

Sally DeLorean and the DeLorean Estate consent to, and agree not to oppose, cancel, or otherwise challenge the registration, or use by DMC of the DeLorean Marks.

4.   Release by DMC Texas. With the exception of the Estate's obligations contained herein, upon filing the Stipulation of Dismissal, DMC Texas, its partners, members, managers, directors, officers, shareholders, executives, administrators, parent companies, subsidiaries, divisions, employees, insurers, representatives, affiliates, agents, assigns, attorneys, predecessors and successors-in-interest (collectively, "DMC Texas Releasors"), forever fully and finally release, acquit, discharge and hold harmless the Estate, its partners, members, managers, directors, officers, shareholders, executives, administrators, parent companies, subsidiaries, divisions, employees, insurers, representatives, affiliates, agents, assigns, attorneys, predecessors and successors-in-interest (collectively, "Estate Releasees"), and each of them, from and against any and all claims and causes of action of any kind or character, in law or equity, and any and all liability now accrued, including all claims, causes of action, demands, losses, expenses, including attorney's fees, damages or injuries.

6.   General Provisions.

(a)   Entire Agreement. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior agreements, understandings, and obligations, whether written or oral.

(b)   Amendments. The terms of this Agreement may not be changed, modified, or discharged, except in writing.

-2-



(c) <u>Assignment</u>. The terms of this Agreement shall be binding on the parties hereto and their respective successors and assigns. Neither this Agreement, nor any part thereof, may be assigned by either party without the express, prior written consent of the other party.

(d) <u>Severability</u>. If any term or provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or unenforceable, this Agreement shall nevertheless remain in full force and effect and it shall not affect the validity or enforceability of the remaining terms and provisions of this Agreement.

(e) <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without regard to its choice of law rules. All actions arising out of or relating to this Agreement shall be heard and determined exclusively in a New Jersey state or federal court sitting in the City of Newark. Consistent with the preceding sentence, the parties hereby (i) submit to the exclusive jurisdiction of any state or federal court sitting in the City of Newark with respect to any action arising out of or relating to this Agreement and (ii) irrevocably waive, and agree not to assert by way of motion, defense, or otherwise, in any such action, any claim that it is not subject to the personal jurisdiction of the courts identified in this Section, that its property is exempt or immune from attachment or execution, that any such action is brought in an inconvenient forum, that the venue of any such action is improper, or that this Agreement may not be enforced in any of the courts identified in this Section.

(f) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, and by each party hereto in separate counterparts, each of which shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument.

(g) <u>Captions</u>. Captions or headings used in this Agreement are for convenience and reference only and will not be construed so as to affect the meaning of the text herein.

(h) <u>Delivery by PDF</u>. This Agreement, to the extent signed and delivered by means of a PDF, shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were an original signed version.

7. <u>Representations and Warranties</u>.

(a) The parties have been represented by independent counsel of their own choice throughout the negotiations that preceded execution of this Agreement. The parties agree that in interpreting any issues that may arise in connection with the construction of this Agreement, rules of construction related to who prepared this Agreement shall be inapplicable, each party having contributed or having had the opportunity to contribute to clarify any issue.

(b) The persons signing this Agreement represent and warrant that they have the authority and legal capacity to bind, and hereby do bind the party on behalf of whom it is executed and, as applicable, their respective party's predecessors, successors, and assigns.

(c) The parties represent and warrant that each of them has the legal right and authority to enter into this Agreement, and that this Agreement is not in conflict with any other agreements to which any of the parties may be or is bound.

-3-



```
10/19/2015 MON 11:06  FAX
Fax sent by : 9739927517        LOUENSTEIN SANDLER        10-18-15 23:83    ☑002/003
                                                                            Pg: 2/3
```

Case 2:14-cv-01146-JLL-JAD Document 29 Filed 09/23/15 Page 5 of 5 PageID: 94

Case 2:14-cv-01146-JLL-JAD Document 27 Filed 09/18/15 Page 5 of 5 PageID: 88

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the Effective Date first above written.

Estate of John Z. DeLorean

By: _[signature]_
Name: Sally DeLorean
Title: _____

DeLorean Motor Company (Texas)

By: _[signature]_
Name: STEPHEN WYNNE
Title: C.E.O.
9/23/15

-4-

# Exhibit B

 

AGREEMENT made as of March 14, 1989 by and between, on the one hand, JOHN Z. DELOREAN ("Seller") and, on the other hand, AMBLIN' ENTERTAINMENT, INC.("Amblin'"), a _____ corporation, and UNIVERSAL PICTURES ("Universal"), a division of Universal City Studios, Inc., a Delaware corporation. Amblin' and Universal are hereinafter referred to jointly as "Purchaser".

<u>Preliminary Statements</u>: Purchaser is the producer of the theatrical motion pictures presently entitled "BACK TO THE FUTURE II" and "BACK TO THE FUTURE III", which are sequels to the motion picture entitled "BACK TO THE FUTURE" previously produced by Purchaser and distributed by Universal. The aforesaid motion pictures are hereinafter referred to as the "Pictures". As Seller is aware, Purchaser used, is using and will use suitably modified DeLorean automobiles as a "prop" (i.e., as a "time machine" belonging to the character "Doc Brown") in the Pictures and in advertising and other forms of exploitation realting thereto. Seller acknowledges that Purchaser did not and does not need Seller's consent to such uses of DeLorean automobiles. Purchaser now desires to acquire from Seller, and Seller desires to grant to Purchaser, certain rights in and to the name and appearance of the DeLorean automobile in order to enable Purchaser to engage in certain merchandising and commercial tie-up activities in connection with the Pictures.

NOW, THEREFORE, Purchaser and Seller hereby enter into this Agreement upon the following terms and conditions:

1. <u>Subject Matter</u>: The subject matter of this Agreement (hereinafter referred to as the "Material") is as follows:

    (a) The appearance of the DeLorean automobile, including, but not limited to, that appearance as depicted in that certain United States Patent number Des. 283,882, dated May 20, 1986, a copy of which is attached hereto as Schedule "I";

    (b) The name "DeLorean"; and

    (c) The logo "DMC" as it appears on the radiator grille of the DeLorean automobile.

2. <u>Rights Granted</u>: Seller hereby grants to Purchaser, the exclusive right, forever and throughout the universe, to use the Material in connection with "time machines" in any and all merchandising and commerical tie-ups as Purchaser may decide, including, but not limited to, the right to manufacture and sell or otherwise dispose of any articles of merchandising (such as toys, games, gadgets, novelties, books, apparel, food and beverages) or services using or based upon the Material. Purchaser shall have the right to change, adapt, rearrange, add to and subtract from the Material in the preparation of any article of merchandising or commercial tie-up using or based upon the Material.

1

DMC-000101

3. **Consideration**: In consideration of Seller's agreements, representations, warranties and indemnities hereunder, and of all rights in the Material which Seller has granted or agreed to grant hereunder, Purchaser agrees to pay to Seller sums equal to five percent (5%) of Purchaser's net receipts (defined below), from merchandising and commercial tie-ups in connection with the Pictures, provided that such merchandising and commercial tie-ups utilize or are based upon the Material as a key component. As used herein, the term "key component" means that one or more elements of the Material is primary or central to an item of merchandising or to a commercial tie-up. Examples of the Material as a key component are a toy time machine based on the modified DeLorean automobile used in the Pictures and tee shirts or posters with a picture of the DeLorean time machine more prominent than any other design element. Such items would qualify for the payments provided for above. On the other hand, a toy time machine included as one of several pieces in a board game, or a picture of the time machine in the background on a tee shirt, poster or book cover or a reference to the time machine in a book or other publication would not qualify for the payments provided for above. As used herein, the term "net receipts" means the gross receipts (i.e., sums received by Purchaser from its licensees), if any, actually received by Purchaser from such merchandising and commercial tie-ups of which the Material is a key component; computed, paid and accounted for in accordance with Universal's customary accounting practices, including deductions of the standard distribution fee of fifty percent (50%) of gross receipts and actual expenses incurred by Purchaser in connection with such merchandising and commercial tie-ups.

4. **Representations and Warranties**: Seller represents and warrants that Seller is the sole owner of the rights in the Material granted or agreed to be granted to Purchaser hereunder; that Seller has the unrestricted right and power to grant the rights in the Material herein specified; that no merchandising and/or commercial tie-up rights in the Material have heretofore been granted, licensed or otherwise transferred to any other person, firm or corporation by any agreement or instrument now valid or outstanding, nor have said rights been encumbered or hypothecated by any act or omission; and that said rights are free and clear of any and all claims or liens whatsoever, and will remain so, insofar as Purchaser is concerned.

5. **Indemnities**: Seller agrees to and does hereby indemnify and hold Purchaser harmless from and against any claim, liability, action, proceeding and/or demand, brought, maintained, prosecuted and/or made, whether or not well founded, whether by Seller or by any other person or entity, based upon, arising out of, resulting from or incurred because of the breach or alleged breach of any representation and/or covenant made by Seller in this Agreement, and from and against any and all loss, cost and/or expense incurred which is sustained by Purchaser in connection therewith, including, but not limited to, reasonable attorneys' fees. Purchaser shall have the right to settle and/or compromise all claims and actions against Purchaser in

2

DMC-000102

APR-11-'99 TUE 13:09 ID:MAYER MORGANROTH    TEL NO:1-313-355-3017    #462 P01

connection with the Material and/or the other rights or privileges granted to Purchaser hereunder, subject to Seller's consent, not to be unreasonably withheld.

6. **Claims**: To the extent that Seller may have the right to prevent the use by third parties of the Material in a manner inconsistent with the rights granted to Purchaser hereunder, Seller hereby agrees that Purchaser may take, and Seller irrevocably grants Purchaser full power and authority to commence and prosecute in Seller's name such claims, actions and/or proceedings, any and all such steps as Purchaser in its discretion may elect, to restrain and prevent others from so doing, and Seller shall cooperate fully with Purchaser in this regard. Any costs incurred by Purchaser in connection with such claims shall be considered an "actual expense" pursuant to paragraph 3 above.

7. **Further Instruments**: At Purchaser's request, Seller agrees to execute and deliver to Purchaser such further documents as Purchaser may reasonably require to effectuate the intent and purpose of this Agreement. If Seller fails to execute and delivery such instruments to Purchaser within a reasonable time after such request, Seller hereby irrevocably appoints Purchaser Seller's attorney-in-fact to execute such instruments.

8. **Notices and Payments**: Any notice shall be given in writing, as follows:

    To Seller:   c/o Morganroth & Morganroth
                 28588 Northwestern Highway, Ste 444
                 Southfield, MI 48034
                 Attn: Mayer Morganroth, Esq.

    To Amblin':  100 Universal City Plaza, Bungalow 477
                 Universal City, CA 91608
                 Attention: Brad Globe

        With courtesy copy to :  Gang, Tyre, Ramer & Brown, Inc.
                                 6400 Sunset Bldg
                                 Los Angeles, CA 90028
                                 Attention: Bruce M. Ramer, Esq.

    To Universal: 100 Universal City Plaza
                  Universal City, CA 91608
                  Attn: Feature Law Dept.

Any party may designate a substitute address by written notice to the others. Notices shall be mailed or transmitted by cable or telegraph and the date of mailing or transmission of any notice shall be deemed the date of service thereof. All payments to Seller hereunder shall be made by delivery or mailing to Seller at the address set forth above.

3

DMC-000103

9. **Assignment:** This Agreement shall bind and inure to the benefit of Seller's and Purchaser's respective heirs, legal representatives, successors and assigns. Purchaser may assign or license all or any part of the rights in the Material granted to Purchaser hereunder. The term "person" as used herein shall include natural persons, firms and corporations.

10. **Laws:** This Agreement shall be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of California applicable to agreements executed and to be wholly performed within that state.

11. **Merger:** This agreement includes the entire understanding of the parties with respect to the subject matter hereof, and all prior and concurrent oral agreements, and all prior written agreements with respect to such subject matter, have been merged herein. No representations or warranties have been made other than those expressly provided for herein. This Agreement may not be modified, except by a written instrument signed by the parties.

JOHN Z. DELOREAN

AMBLIN' ENTERTAINMENT, INC.

By _____

UNIVERSAL PICTURES, a division of Universal City Studios, Inc.

By _____
Vice President

4

# Exhibit C

Case 2:18-cv-08212-JLL-JAD   Document 8-3   Filed 06/18/18   Page 14 of 17 PageID: 126



R. Scott Thompson
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: 973 597 2532
F: 973 597 2533
E: sthompson@lowenstein.com

February 13, 2018

VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Universal Pictures
100 Universal City Plaza
Universal City, California 91608

Attention:  Feature Law Dept.

Amblin' Entertainment, Inc.
100 Universal City Plaza
Bungalow 477
Universal City, California  91608

Attention: Brad Globe

Re:   Agreement with John Z. DeLorean dated March 14, 1989

Dear Sirs/Madams:

This firm represents the Estate of John Z. DeLorean (the "Estate").  I am writing in connection with the agreements between and among Universal Pictures ("Universal"), Amblin' Entertainment, Inc. ("Amblin'"), and Mr. DeLorean, dated as of March 14, 1989, copies of which are attached (the "Agreements").

The Estate recently came into possession of copies of the Agreements.  In the Agreements, Universal and Amblin' agreed to Mr. DeLorean (and his successors and assigns), 5% of their net receipts from merchandising and commercial tie-ups in connection with the "Back to the Future" movies that utilized the image of a DeLorean automobile as a key component.  We understand that, although payments were made pursuant to the Agreements for several years, no such payments have been made for some time.

Please provide an accounting of all revenues received by Universal and/or Amblin' for an accounting of all revenues received by Universal and/or Amblin' from merchandising and commercial tie-ups utilizing the image of the DeLorean automobile as a key component,

NEW YORK     PALO ALTO     NEW JERSEY     UTAH     WASHINGTON, D.C.          Lowenstein Sandler LLP

Universal Pictures, et al.                                    February 13, 2018
                                                                        Page 2

including the sale of rights to use the image of the DeLorean automobile depicted in the "Back to the Future" movies. In addition, please remit to the Estate all amounts due to Mr. DeLorean under the Agreements.

Please consider this letter as the notice required under Section 8 of each of the Agreements as a designation of the following substitute address for notices:

> R. Scott Thompson, Esq.
> Lowenstein Sandler LLP
> 1 Lowenstein Drive
> Roseland, New Jersey 07068

Very truly yours,

R. Scott Thompson

29008/3
2/13/18 49859993.1

Enclosure

cc:     Bruce M. Ramer, Esq. (Certified Mail)



# Exhibit D



| | |
|---|---|
| Word Mark | DMC |
| Goods and Services | IC 012. US 019 021 023 031 035 044. G & S: automobiles and structural parts. FIRST USE: 19950512. FIRST USE IN COMMERCE: 19950512 |
| | IC 025. US 022 039. G & S: clothing, namely, coats, jackets, shirts, and hats. FIRST USE: 19950512. FIRST USE IN COMMERCE: 19950512 |
| | IC 035. US 100 101 102. G & S: automobile dealerships. FIRST USE: 19950512. FIRST USE IN COMMERCE: 19950512 |
| Mark Drawing Code | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| Serial Number | 85638115 |
| Filing Date | May 30, 2012 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | January 1, 2013 |
| Registration Number | 4304360 |
| International Registration Number | 1261892 |
| Registration Date | March 19, 2013 |
| Owner | (REGISTRANT) DeLorean Motor Company CORPORATION TEXAS 15023 Eddie Drive Humble TEXAS 77396 |
| Attorney of Record | Susan B. Meyer |
| Description of Mark | Color is not claimed as a feature of the mark. The mark consists of an image consisting of a stylized depiction of the letters "D","M","C" with the first letter on the left hand side looking like a semi circle with the opening on the left hand side, followed by a lowercase "M", followed by a semicircle with the opening on the right hand side. |
| Type of Mark | TRADEMARK. SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |