## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALLY DELOREAN, *as Administratrix for the Estate of John Z. DeLorean*, <br><br>Plaintiff, <br><br>v. <br><br>DELOREAN MOTOR COMPANY (TEXAS), <br><br>Defendant. | Civil Action No.: 18-8212 (JLL) <br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant DeLorean Motor Company (Texas)'s Motion to Dismiss the Complaint and to Enforce the Settlement Agreement entered into by the parties in a previous action, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for Attorney's Fees. (ECF No. 4). Plaintiff Sally DeLorean, as Administratrix for the Estate of John Z. DeLorean, filed opposition as well as a Cross-Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, (ECF No. 8), which Defendant replied to, (ECF Nos. 12–13). The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court grants Defendant's Motion in part, enforces the settlement agreement, and dismisses Plaintiff's Complaint. Because the Court dismisses the Complaint, it need not analyze Plaintiff's Cross-Motion for Summary Judgment and denies same as moot.

I.  **BACKGROUND**

Plaintiff is Administratrix for the Estate of the late John Z. DeLorean, who created the DMC 12 (also known as "the DeLorean automobile"), a unique sports car which was featured in the "Back to the Future" film series. (ECF No. 1 ("Compl.") ¶¶ 3, 8). In 2014, Plaintiff brought a separate action before this Court against Defendant ("the 2014 Action"), alleging that Defendant "improperly and illegally appropriated for its own use Mr. DeLorean's legacy, including the DeLorean Identity, together with intellectual property such as the DMC Marks and DMC 12 Trade Dress, all of which belong[ed] to [Plaintiff]. " (Docket No. 14-1146, ECF No. 1 ¶ 5; *see also* Compl. ¶ 10 (referencing the 2014 Action)). The "DMC Marks" referred to four trademarks used by Mr. DeLorean before his death, specifically "the company name 'DeLorean Motor Company,' the 'DMC' brand and associated logo, 'DMC 12,' (the official name of the car produced by [Mr. DeLorean]) and 'The DeLorean' (the common name used for DMC 12)." (Docket No. 14-1146, ECF No. 1 ¶ 1). The term "DMC 12 Trade Dress" referred to "the distinctive, non-functional design and image of the unique DMC 12 sports car" created by Mr. DeLorean. (*Id.*).

In the 2014 Action, Plaintiff alleged that Defendant unlawfully produced "replica DMC 12s," and designed and sold "various items under DMC Marks and DMC 12 Trade Dress," including hats, pens, notebooks, luggage, and keychains containing "the DeLorean name and/or reflecting DMC 12 Trade Dress." (*Id.* ¶¶ 4, 25, 37). According to Plaintiff, Defendant "even purport[ed] to license the use of the DMC Marks and DMC 12 Trade Dress to third parties." (*Id.* ¶ 4). On September 18, 2015, the parties entered into a settlement agreement ("the Settlement Agreement"), which closed the 2014 Action. (Compl. ¶¶ 4, 10; *see also* ECF No. 1-1 ("Settlement Agreement")).

The Settlement Agreement stated in relevant part that Defendant agreed to pay Plaintiff "in full satisfaction of any and all claims against it in the [2014 Action]" in exchange for Plaintiff releasing and discharging any and all claims "that were sought, or could have been sought, in the [2014 Action]," except for "the obligations of [Defendant] set forth herein." (Settlement Agreement ¶¶ 1, 3(a)). The Settlement Agreement further stated,

> [Plaintiff] acknowledges [Defendant's] trademark and rights to use the DeLorean automobile brand, and associated products and services, further, [Plaintiff] covenants and agrees that . . . it will not willingly participate in any legal proceeding against [Defendant] in the future in connection with (i) the use by [Defendant] of (a) the name "DeLorean Motor Company", or (b) the trademark registered to [Defendant] of the DMC logo, or (ii) the use by [Defendant] of the trademark registered to [Defendant] of the stylized word "delorean["] ("DeLorean Marks") ("any of which are used in conjunction with the automobile industry and associated business ventures, including those associated with the DeLorean automobile, or other automotive products and services, and related brand merchandising and licensing associated or related to the business of the DeLorean Motor Company, [Defendant] and its associated brand . . . .
>
> [Plaintiff] retains all right in (i) any other use of the name DeLorean, (ii) any aspect of the personal life of John Z. DeLorean, or (iii) any depiction of the likeness of John Z. DeLorean that is not public property or purchased from those legitimately holding publishing rights thereto.
>
> [Plaintiff], individually and as Administratrix of the Estate of John DeLorean, hereby acknowledges the worldwide rights of [Defendant] to use, register, and enforce any of DeLorean Marks for any and all goods and services, relating to automobile dealerships, automobiles, automobile parts and accessories, clothing, and promotional items.

(*Id.* ¶ 3(b)).

The Settlement Agreement also specified that it would be governed by New Jersey state law, and that New Jersey federal and state courts shall retain the exclusive jurisdiction for any future actions arising out of the agreement. (*Id.* ¶ 6(e); Compl. ¶ 4).

Through the course of discovery in the 2014 Action, Plaintiff purportedly became aware of an agreement that Mr. DeLorean entered into with Universal Pictures ("Universal") in March 1989 ("the Universal Agreement"). (Compl. ¶¶ 8–9; *see also* ECF No. 8-2 ¶¶ 2–3, 5). Pursuant to the Universal Agreement, Mr. DeLorean granted Universal "certain rights in and to the name and appearance of the DeLorean automobile in order to enable [Universal] to engage in certain merchandising and commercial tie-up activities in connection with the ['Back to the Future' films]." (ECF No. 1-2 ("Universal Agreement") at p. 1). Specifically, the Universal Agreement contained the following terms:

1. Subject Matter: The subject matter of this agreement (hereinafter referred to as the "Material") is as follows:
   (a) The appearance of the DeLorean automobile, including, but not limited to, that appearance as depicted in that certain United States Patent number Des. 283,882, dated May 20, 1986, a copy of which is attached hereto as Schedule "I";
   (b) The name "DeLorean"; and
   (c) The logo "DMC" as it appears on the radiator grille of the DeLorean automobile.
2. Rights Granted: [Mr. DeLorean] hereby grants to [Universal], the exclusive right, forever and throughout the universe, to use the Material in connection with "time machines" in any and all merchandising and commercial tie-ups as [Universal] may decide, including, but not limited to, the right to manufacture and sell or otherwise dispose of any articles of merchandising (such as toys, games, gadgets, novelties, books, apparel, food and beverages) or services using or based upon the Material. [Universal] shall have the right to change, adapt, rearrange, add to and subtract from the Material in the preparation of any article of merchandising or commercial tie-up using or based upon the Material.

(*Id.* ¶¶ 1–2).

In exchange for these rights, Universal was to pay Mr. DeLorean five percent of Universal's "net receipts . . . from merchandising and commercial tie-ups in connection with the ['Back to the Future' films]." (*Id.* ¶ 3). Mr. DeLorean represented and warranted in the Universal Agreement that he was "the sole owner of the rights in the Material granted or agreed to be granted

4

to [Universal] hereunder." (*Id.* ¶ 4). The Universal Agreement also stated that it "shall bind and inure to the benefit of [Mr. DeLorean's] and [Universal's] respective heirs, legal representatives, successors and assigns." (*Id.* ¶ 9). After entering into the Universal Agreement, according to Plaintiff, "Universal made some payments under the agreement, but stopped making the payments at a time that is unknown to [Plaintiff]." (Compl. ¶ 9).

In February 2018, Plaintiff contacted Universal for an accounting of the amount Plaintiff was allegedly owed under the Universal Agreement. (Compl. ¶ 12). Universal allegedly informed Plaintiff that Defendant had previously claimed it possessed the rights to the Universal Agreement pursuant to the Settlement Agreement, and, based on that representation, Universal paid Defendant all royalty payments owed under the Universal Agreement. (*Id.*).[1] Defendant subsequently wrote a letter to Plaintiff, in which it claimed it would "bring an action against [Plaintiff] for tortious interference unless [Plaintiff] immediately retracted its request to Universal for payment under the Universal Agreement." (Compl. ¶ 13). Plaintiff accordingly brought the present action against Defendant, asserting causes of action for declaratory judgment and unjust enrichment. (Compl. ¶¶ 14–20). In the Complaint, Plaintiff seeks a declaratory judgment that the Settlement Agreement does not give Defendant any rights under the Universal Agreement, and that Plaintiff is the rightful owner of all rights stemming from the Universal Agreement. (Compl. at p. 6). Plaintiff also requests that the Court direct Defendant to account for, and pay over, the royalty payments it received from Universal under the Universal Agreement. (*Id.*).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] Plaintiff later claimed that the amount Universal paid to Defendant "was well in excess of $100,000." (ECF No. 8-2 ¶ 9).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

#### A. Failure to State a Claim and Enforce the Settlement Agreement

The main issue before this Court is whether the materials licensed in the Universal Agreement were included in the Settlement Agreement, thereby barring Plaintiff from asserting a claim under the Universal Agreement as a matter of law. "A settlement agreement between parties to a lawsuit is a contract," *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (citations omitted), the interpretation of which is a question of law, *Travelers Prop. Cas. Co. of Am. v. USA Container*

Co., 686 F. App'x 105, 111 (3d Cir. 2017) (citing *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012)). "Under New Jersey law, courts should enforce contracts as the parties intended, which is assessed by examining the plain language of the contract, the surrounding circumstances, and the purpose of the contract." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 228–29 (3d Cir. 2018) (citations and quotations omitted). Upon analyzing the subject matter of both agreements, and the context in which the agreements apply, the Court finds that Plaintiff's claims under the Universal Agreement are within the scope of those claims barred by the Settlement Agreement.

1. Subject Matter of the Agreements

Though the terms "Universal Agreement" or "royalty payments" are not mentioned in the Settlement Agreement, the Court nonetheless finds that the subject matter of the Universal Agreement is covered by the Settlement Agreement. The Court reaches this conclusion based on the overlap of the clear terms in both agreements. In the Settlement Agreement, Plaintiff's covenant not to sue Defendant pertained to the latter's use of the following words and trademarks: (i) "the name 'DeLorean Motor Company,'" (ii) "the DMC logo," and (iii) "the stylized word 'delorean.'" (Settlement Agreement ¶ 3(b)). In the Universal Agreement, Universal was given the right to use (i) "[t]he appearance of the DeLorean automobile," (ii) "[t]he name '*DeLorean*,'" and (iii) "[t]he *logo 'DMC'* as it appears on the radiator grille of the DeLorean automobile." (Universal Agreement ¶ 1 (emphasis added)). As shown by this language, the agreements share the same or similar terms, such as the use of the word DeLorean and the DMC logo.

Contrary to Plaintiff's argument, (ECF No. 8 at 10–11), the Court gives little weight to the fact that the term "the appearance of the DeLorean automobile" appears in the Universal Agreement but not in the Settlement Agreement, because the appearance of the DeLorean

7

automobile was contemplated throughout the 2014 Action and the Settlement Agreement. Specifically, the allegations in the 2014 Action pertained to Defendant "falsely hold[ing] itself out as the owner of the right to build and distribute the DMC 12 and use the DMC Marks and *DMC 12 Trade Dress*." (Docket No. 14-1146, ECF No. 1 ¶ 35 (emphasis added)). The Court is further convinced that the Settlement Agreement contemplated the inclusion of the DeLorean automobile's appearance because examples of the DeLorean and DMC trademarks from the 2014 Action consistently appear on the image of the DeLorean automobile, (ECF No. 12 at 5–6). *See interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 348 (D.N.J. 2004) (explaining that "[a] trademark is a symbol of the goodwill associated with the product or business it represents and has no significance independent of that goodwill.") (citations omitted). As both agreements apply to the use of the word "DeLorean" and the DMC logo, and relate to the DeLorean automobile's image, the Court concludes that the subject matter of the agreements overlap.

2. Context of the Agreements

Additionally, the Settlement Agreement and Universal Agreement both pertain to the use of the abovementioned names and trademarks in a similar context, *i.e.*, the manufacturing and merchandizing of products displaying the DeLorean automobile's image and brand. The Court reaches this conclusion based on the clear overlapping language of the agreements. Under the Universal Agreement, Universal was given "the right to manufacture and sell . . . *any articles of merchandising (such as toys, games, gadgets, novelties, books, apparel, food and beverages)* . . . using or based upon the Material." (Universal Agreement ¶ 2 (emphasis added)). Similarly, under the Settlement Agreement, Plaintiff (i) acknowledged Defendant's "*worldwide rights*" to use the abovementioned names and trademarks "for any and all goods and services, relating to automobile dealerships, automobiles, automobile parts and accessories, *clothing, and promotional items*," and

8

(ii) covenanted not to sue Defendant for its use of said names and trademarks "in conjunction with the automobile industry and associated business ventures, including those associated with the DeLorean automobile, or other automotive products and services, *and related brand merchandising and licensing associated or related to the business of the DeLorean Motor Company,* [Defendant] *and its associated brand.*" (Settlement Agreement ¶ 3(b) (emphasis added)).

Further evidence that both agreements pertained to the marketing and merchandizing of the DeLorean automobile's image and related names and trademarks is the fact that, in the 2014 Action, Defendant was allegedly selling items akin to those contemplated by the Marketing Agreement, such as hats, pens, notebooks, luggage, and keychains containing "the DeLorean name and/or reflecting DMC 12 Trade Dress." (Docket No. 14-1146, ECF No. 1 ¶ 25). Plaintiff also alleged in the 2014 Action that Defendant was licensing to third parties the use of the name DeLorean and the image of the DeLorean automobile. (*Id.* ¶ 27; *see also* Settlement Agreement ¶ 3(a) (stating that Plaintiff releases Defendant from "all claims, causes of action, demands, losses, expenses, . . . or injuries that were sought, *or could have been sought*, in the [2014 Action].") (emphasis added)). Considering both agreements pertained to the merchandizing of similar items associated with the DeLorean automobile's image, brand and related trademarks, as contemplated by the 2014 Action and the clear language of the agreements, the Court concludes that Plaintiff's claims under the Universal Agreement were incorporated in, and therefore barred by, the Settlement Agreement. Accordingly, Plaintiff cannot state a claim for relief in connection with the Universal Agreement as a matter of law, and the Complaint must be dismissed.[2]

---

[2] Even if Plaintiff is correct that Defendant was not "assigned" the Universal Agreement and Plaintiff retained some rights in same, (ECF No. 8 at 13–15), the Court agrees with Defendant that Plaintiff's attempt to enforce the Universal Agreement would violate the Settlement Agreement, (ECF No. 12 at 9), because the subject matter of the Universal Agreement is covered and barred by the Settlement Agreement. Based on this conclusion, Mr.

### B. Attorney's Fees

Defendant also moves for attorney's fees. (ECF No. 4-6 at 11). However, Defendant failed to include "any affidavits or other documents complying with 28 U.S.C. § 1746," as required by Local Civil Rule 54.2. (*See generally* ECF No. 4). Therefore, the Court denies Defendant's request for attorney's fees without prejudice. Defendant may renew said request at a later time if appropriate and in compliance with the Local Civil Rules and Federal Rules of Civil Procedure.

### IV. CONCLUSION

For the aforementioned reasons, the part of Defendant's Motion to Dismiss the Complaint and Enforce the Settlement Agreement is hereby granted, the part of Defendant's Motion seeking Attorney's Fees is hereby denied, Plaintiff's Cross-Motion for Summary Judgment is hereby denied as moot, and Plaintiff's Complaint is hereby dismissed. An appropriate Order follows this Opinion.

Dated: October __11__, 2018.

_____
JOSE L. LINARES
Chief Judge, United States District Court

---

DeLorean's Estate is no longer the "the sole owner of the rights in the Material granted or agreed to be granted to [Universal] hereunder," as Mr. DeLorean initially warranted in the Universal Agreement. (Universal Agreement ¶ 4).